# United States Court of Appeals
## For the Eighth Circuit

_____

No. 19-2351
_____

United States of America

*Plaintiff - Appellee*

v.

Amin Ricker

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of South Dakota - Pierre

_____

Submitted: June 18, 2020
Filed: December 22, 2020

_____

Before GRUENDER, WOLLMAN, and KOBES, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

A jury convicted Amin Ricker of the following federal offenses: two counts of aggravated sexual abuse of a child who had not attained the age of 12 years; one count of travel with intent to engage in illicit sexual conduct; and four counts related to the transportation, distribution, receipt, and possession of child pornography. The

district court[1] sentenced Ricker to a total of 600 months' imprisonment. Ricker argues that the district court erred in denying his motion to suppress evidence, in sequestering his father during trial, in admitting certain evidence, and in determining the fact that Ricker had a prior conviction for possession or distribution of child pornography. Ricker also contends that his sentence is substantively unreasonable. We affirm.

## I. Background

Ricker traveled from South Dakota to Texas in January and March 2015 to sexually abuse S.M. and J.M., the seven-year-old twin daughters of an acquaintance. He took photos and videos of the abuse.

Law enforcement officers in Pierre, South Dakota, received information in February 2017 suggesting that cheer_dad17 sent and received child pornography images via online chat. The internet provider disclosed that cheer_dad17 was accessing the internet from Ricker's address. Officers then obtained a search warrant for Ricker's residence.

During the search, Ricker made incriminating statements and confirmed that he was the account user cheer_dad17. Officers seized several devices, including Samsung cell phones, an Apple iPad, and a 64-gigabyte thumb drive. A forensic review of the seized devices revealed approximately 30,000 images and more than 100 videos of child pornography and child erotica. Data recovered from a Samsung cell phone indicated that Ricker had shared with an online friend links to his file storage system, which contained child pornography. In return, the friend sent Ricker child pornography and links to child pornography websites.

---

[1]The Honorable Roberto A. Lange, now Chief Judge, United States District Court for the District of South Dakota.

Pornographic and non-pornographic images and videos of S.M. and J.M., were recovered from the 64-gigabyte thumb drive. The metadata indicated that the photos and videos were created in January and March 2015 and that many were created with the models of Samsung cell phone and Apple iPad that had been seized from Ricker.

Ricker was charged with the child sexual abuse and child pornography offenses set forth above. After an evaluation, he was deemed competent to stand trial. The results of his evaluation included diagnostic impressions of autism spectrum disorder and major depression and a recommendation to monitor for pedophilic disorder. Ricker's father moved from Florida to South Dakota to support his son during these legal proceedings. Ricker lived with his father while on pretrial release.

Ricker moved to suppress the statements he made while his home was being searched, arguing that he was in custody, that he had invoked his right to counsel, and that his statements were not voluntary. The district court denied the motion, adopting the magistrate judge's[2] report and recommendation. As discussed more fully below, the district court overruled Ricker's pretrial objections to the sequestration of his father as a potential witness and to the admission of descriptive cover sheets attached to the evidence obtained from his devices. The district court also denied Ricker's motion to exclude the expert testimony of Anthony Imel, a Physical Scientist Forensic Examiner with the Federal Bureau of Investigation (FBI).

At trial, the government presented evidence—bank records, employment records, and airline records—that Ricker had traveled from South Dakota to Texas in January and March 2015. Ricker also confirmed the trips. Several law enforcement officers testified, including Special Assistant Attorney General Toby Russell of the South Dakota Division of Criminal Investigation. Russell had

---

[2]The Honorable Mark A. Moreno, United States Magistrate Judge for the District of South Dakota.

completed forensic examinations on the devices seized from Ricker and had created the descriptive cover sheets for the evidence stored therein, which included photos, videos, and copies of online chats. Photos and videos showed Ricker digitally penetrating S.M. and J.M. and pushing his erect penis against their vaginas. In one video, S.M. can be heard saying, "Amin . . . stop hitting."

S.M. and J.M. testified that Ricker had sexually abused them in Texas, when they were seven years old. S.M. explained that Ricker would grab her and kiss her on the lips. He once climbed in bed with her, began taking off her clothes, and grabbed her ankle when she tried to get away. She was able to break free. On another occasion, S.M. was in the bathroom when Ricker entered and started kissing her. S.M. testified that "he pulled me in the bedroom and started having sex with me," which she clarified as "taking his private spot into mine." The government confirmed that S.M. meant vaginal intercourse. J.M. testified that she had witnessed Ricker sexually abuse S.M. and that Ricker had abused her, as well, "put[ting] his private part to mine." Both girls testified that Ricker bought their family gifts and took them out to dinner.

S.M. and J.M.'s mother, Rhonda, testified that Ricker had traveled to Texas two or three times to visit her family in late 2014 or early 2015. He brought gifts for the children and gave Rhonda money to help pay bills and buy food. Rhonda testified that she walked into a room during one of Ricker's visits and saw Ricker lying on the floor in his underwear and the girls nearby in their underwear, whereupon she left the room. She returned and left repeatedly, observing Ricker naked with S.M.'s hand on his penis and later observing J.M. with her mouth on Ricker's penis. S.M. and J.M. were removed from their mother's home in December 2015. Rhonda testified that she had previously admitted to a Texas law enforcement officer that she had been watching the door to ensure that no one saw Ricker sexually abusing the girls.

-4-

Rhonda identified S.M. and J.M. as the children with Ricker in certain photos and videos that were found on Ricker's devices.[3]

FBI Forensic Examiner Imel testified that he had compared known images of Ricker's left hand to two images of a left hand from a video found on a seized device. He "eliminated the female genitalia that was present in the" video images to complete the comparison. He pointed out the similarities between the images and testified that Ricker's left index finger appeared to be the left index finger depicted in the video.

Ricker presented expert evidence regarding his autism diagnosis and testified in his own defense. He denied sexually abusing S.M. and J.M. and testified that the images of child pornography may have been put in his electronic storage by an online friend who shared the account.

Ricker was found guilty on all counts. At sentencing, the district court determined that Ricker's total offense level was 43, that his criminal history category was I, and that his sentencing range under the U.S. Sentencing Guidelines (Guidelines) was life imprisonment.

## II. Discussion

### A. Motion to Suppress

We first address the district court's denial of Ricker's motion to suppress the statements he made to law enforcement officers while his home was being searched. We review the district court's legal conclusions *de novo* and its findings of fact for clear error. United States v. Czichray, 378 F.3d 822, 825 (8th Cir. 2004).

---

[3]Rhonda was charged with aggravated sexual abuse of a child in Dallas County, Texas. She agreed to plea to a lesser charge in exchange for her testimony against Ricker.

According to evidence presented at the suppression hearing, Detective Dusty Pelle and Officer David Estes of the Pierre, South Dakota, Police Department, along with five other law enforcement officers, went to Ricker's residence to execute a search warrant in February 2017. Estes activated his bodycam upon arriving at the scene.

Pelle and Estes approached the mobile home in which Ricker had rented a room. When Ricker answered the door, Pelle stepped inside and told Ricker about the search, while Estes conducted a protective sweep. Pelle then explained that Ricker was not under arrest, but that Pelle would like to speak to him.

With Pelle's permission, Ricker called his father, Carl Ricker, who thereafter asked to speak to the detective. Pelle accepted the phone and explained that Ricker was not under arrest, but that Pelle wanted to interview Ricker about "some online stuff." Carl Ricker said that he did not want his son to talk to anyone without an attorney present, to which Pelle responded that Ricker was an adult who could make that decision for himself. During the call, the remaining officers entered the residence and began the search.

Estes kept watch over Ricker during the search. While still talking with his father, Ricker went into the bathroom to urinate. Estes instructed Ricker to keep the door open, later testifying that he did so to ensure that Ricker could not destroy the phone or grab a hidden weapon. Ricker told his father to call his attorney, because his cell phone was covered by the warrant. After Pelle again spoke to Carl Ricker, the call ended and officers seized the cell phone.

Estes and Ricker stepped outside the mobile home, where Estes made small talk. Ricker initially told Estes that he was scared and nervous, but he soon began discussing his work as a railroad conductor and his early life in Singapore. Pelle eventually joined Estes and Ricker. Pelle explained that he would like to talk to

Ricker, but that it was Ricker's decision and that he could stop the conversation at any time. When Pelle asked whether he would like to talk at the police station or in Pelle's vehicle, Ricker replied, "we can talk in the car."

Pelle activated a recording device after they were seated in the front seat of his vehicle. Pelle reiterated that Ricker was not under arrest, that Ricker did not have to talk to him, and that Ricker could end the conversation at any time. After Ricker said that his attorney was at a funeral, Pelle explained, "[I]f you don't want to talk to me because you want an attorney, you got to tell me that . . . 'cause if you say you want an attorney, . . . we'll just stop . . . talking." Pelle twice reiterated that if Ricker asked for an attorney, the conversation would end. Ricker said that his father wanted the attorney to be present, to which Pelle replied that Ricker was an adult and that it was his decision to ask for an attorney. Ricker thereafter made several incriminating statements. When Ricker indicated that he would like to speak to his attorney, Pelle immediately terminated the interview, and the men exited the vehicle.

Ricker argues that the district court should have suppressed the statements he made to Pelle, because he was in custody when he made them and had not been advised of his rights under Miranda v. Arizona, 384 U.S. 436 (1966). To determine whether a person is in custody, we ask "whether there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." California v. Beheler, 463 U.S. 1121, 1125 (1983) (internal quotation marks and citation omitted). We consider the totality of the circumstances in determining how a reasonable person in Ricker's position would have understood his situation. See Berkemer v. McCarty, 468 U.S. 420, 442 (1984); see also United States v. Griffin, 922 F.2d 1343, 1349 (8th Cir. 1990) (listing six non-exhaustive factors for evaluating whether an individual is in custody for purposes of Miranda). We have said that "[t]he most obvious and effective means of demonstrating that a suspect has not been taken into custody . . . is for the police to inform the suspect that an arrest is not being

made and that the suspect may terminate the interview at will." Griffin, 922 F.2d at 1349 (internal quotation marks and citation omitted).

We conclude that Ricker was not subjected to the restraints associated with a formal arrest and thus was not taken into custody at any time during the search of his home. Although several officers were present to execute the search warrant, only Pelle and Estes had any meaningful interaction with Ricker. Pelle repeatedly explained to Ricker that he was not under arrest, that the questioning was voluntary, that Ricker was free to end the conversation at any time, and that Pelle would end the interview if Ricker were to ask to speak to an attorney. To ensure that Ricker did not interfere with the search and that the other officers could complete their evidence-gathering tasks, Estes did not allow Ricker to move freely throughout his home and kept watch over Ricker when he used the bathroom. Ricker was not handcuffed or physically restrained, however, and he was allowed to call his father on his cell phone. Neither Pelle nor Estes employed any strong-arm tactics or deceptive stratagems during their conversations with Ricker. True to his word, Pelle ended the interview as soon as Ricker himself indicated that he wanted to wait for his attorney. In light of these circumstances, a reasonable person in Ricker's situation would not have viewed himself restrained as though he were under formal arrest.

We also conclude that Ricker did not assert his Fifth Amendment right to counsel by saying that his attorney was at a funeral and that his father wanted his attorney to be present. See Davis v. United States, 512 U.S. 452, 462 (1994) (holding that the remark "[m]aybe I should talk to a lawyer" was not a request for counsel); United States v. Mohr, 772 F.3d 1143, 1146 (8th Cir. 2014) (holding that the defendant's "statement 'I think I should get [a lawyer]' was not an unequivocal invocation of his right to counsel"). Nor could Carl Ricker invoke his son's right to counsel for him. See Moran v. Burbine, 475 U.S. 412, 433 n.4 (1986) ("[T]he privilege against compulsory self-incrimination is, by hypothesis, a personal one that can only be invoked by the individual whose testimony is being compelled.").

Finally, we agree with the district court's determination "that Ricker being on the autism spectrum and English being his second language did not make his statements involuntary based on the totality of the circumstances." D. Ct. Order of March 8, 2019, at 3 (citing Schneckloth v. Bustamonte, 412 U.S. 218, 227 (1973)).

## B. Sequestration of Carl Ricker

A week before trial began, the government filed its amended witness list, which included Carl Ricker's name. The government also moved *in limine* to sequester all witnesses. Ricker objected to the sequestration of his father, arguing that the government had placed Carl Ricker on the witness list to exclude him from the trial. The government responded that Carl Ricker was a witness with respect to the day the search warrant was executed, as well as with respect to Ricker's mental health and autism diagnosis, about which Ricker's expert would testify. The court found that the government presented "a colorable reason" for placing Carl Ricker on the witness list and concluded that the sequestration order thus applied to him. The court revisited its ruling before the government closed its case-in-chief and decided to keep its order in place. Carl Ricker remained sequestered during the trial but was not called as a witness.

Rule 615 of the Federal Rules of Evidence states, "At a party's request, the court must order witnesses excluded so that they cannot hear other witnesses' testimony." The purpose of sequestration is twofold. "It exercises a restraint on witnesses 'tailoring' their testimony to that of earlier witnesses; and it aids in detecting testimony that is less than candid." Geders v. United States, 425 U.S. 80, 87 (1976). We review for abuse of discretion the district court's decision to sequester a witness, reversing only upon "a showing of substantial prejudice." See United States v. Conners, 894 F.2d 987, 991 (8th Cir. 1990) (standard of review).

We conclude that the district court did not abuse its discretion by sequestering Carl Ricker during trial. Although the government has failed to articulate how Carl Ricker's testimony about the day of the search might have been relevant at trial, its claim that it considered calling Carl Ricker to rebut the defense expert's testimony is not without some merit. Ricker had filed a notice of intent to present expert evidence, anticipating that the psychiatrist would testify to "Ricker's mental health condition(s)." Carl Ricker had testified at the suppression hearing that despite having been diagnosed as suffering from autism, his son was intelligent and self-sufficient. Carl Ricker also had claimed that the victims had taken advantage of his son. The district court's decision to order Carl Ricker's sequestration thus fell within the bounds of its discretion.

Ricker argues that the exclusion of Carl Ricker from the courtroom during trial violated his Sixth Amendment right to a public trial and constituted structural error. The Sixth Amendment guarantees an accused's "right to a speedy and public trial." The Supreme Court has said "that an accused is at the very least entitled to have his friends, relatives and counsel present, no matter with what offense he may be charged." In re Oliver, 333 U.S. 257, 272 (1948). This entitlement is not absolute, however, and does not necessarily prohibit the sequestration under Rule 615 of the defendant's friends or relatives who may be called as witnesses. See United States v. Blanche, 149 F.3d 763, 769-70 (8th Cir. 1998) (rejecting defendant's claim that his Sixth Amendment right to a public trial was violated when the district court, pursuant to Rule 615, refused to allow his sister to be in the courtroom for part of trial); see also United States v. Sherlock, 962 F.2d 1349, 1356 (9th Cir. 1989) ("The right to a public trial . . . is not absolute and must give way in some cases to other interests essential to the fair administration of justice." (citing Waller v. Georgia, 467 U.S. 39, 45 (1984))). Because Carl Ricker could have been called to testify during his son's trial, we conclude that the district court did not err when it excluded him from the courtroom under Rule 615.

## C. Admission of Cover Sheets

Special Assistant Attorney General Russell completed forensic examinations of nineteen devices seized from Ricker. Russell testified that he previewed the files on the devices looking for evidence of child pornography, which he defined as "images or videos that show minors engaging in prohibited sex acts." The district court interrupted Russell's testimony to explain to the jury that they would receive an instruction "defining child pornography under federal law, which may or may not be different than [the] testimony you're hearing."

Over Ricker's objection, the district court admitted the descriptive cover sheets that Russell had created to accompany the numerous exhibits associated with his forensic examinations. The cover sheets stated the device information and described the underlying exhibit, typically listing the file name, the file path, and the file date and time. Some cover sheets also included Russell's opinions, however. For example, one described the exhibit as "show[ing] the receipt of a video file depicting child pornography" and another described the exhibit as containing images "that are visual duplicates or visually similar to the erotic and pornographic image files depicting [the minor victim] that were recovered" from another device. Some cover sheets identified the minor victim. The district court issued the following pre-submission limiting instruction:

> Some of these cover sheets and some of Special Agent Russell's testimony characterized images as "child pornography" and named someone whom Special Agent Russell believed to be the subject of the image or exhibit. It is for you to decide based on the evidence and these instructions what, if any, images constitute child pornography and who is pictured in any image.

-11-

Ricker argues that the information set forth on the cover sheets constituted inadmissible hearsay. "'Hearsay' means a statement that (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). Statements include a person's written assertions. Fed. R. Evid. 801(a). We review the district court's evidentiary rulings for abuse of discretion. See United States v. Hawkins, 796 F.3d 843, 864 (8th Cir. 2015) (standard of review).

The opinions set forth in the cover memos (*e.g.*, that images depicted child pornography, that certain images were similar to other images, and that certain victims were depicted in the exhibits) constituted hearsay. These previously written assertions by Russell were offered in evidence by the government to prove the truth of the matters asserted. The government did not cite any relevant rule or case that would permit Russell's earlier statements to be admitted into evidence. We thus conclude that the district court should not have admitted these hearsay-containing cover sheets into evidence.

We do not decide whether it was error to admit the cover sheets that listed only the device and file information (*i.e.,* name, path, date, and time). Ricker has not specifically challenged the content of those cover sheets, and we conclude that he suffered no prejudice from their admission.

We hold that any error in admitting the cover sheets was harmless in light of the overwhelming evidence against Ricker, coupled with the district court's limiting instruction. See Hawkins, 796 F.3d at 866 (holding that the district court's erroneous admission of certain evidence was harmless in light of the overwhelming evidence and "the safeguards the district court and the parties implemented to minimize the prejudicial effect of this evidence"); United States v. Adejumo, 772 F.3d 513, 525 (8th Cir. 2014) ("An erroneous evidentiary ruling is harmless . . . if it did not have a substantial influence on the jury's verdict."). The victims offered compelling

testimony of the abuse they suffered, which was supported by the photos and videos of their abuse, as well as the testimony of other witnesses. The evidence that Russell traveled from South Dakota to Texas, recorded his sexual abuse of the victims, distributed certain images of that abuse, and organized and maintained thousands of images and more than 100 videos of child pornography and child erotica supported the child pornography charges.

### D. Admission of Expert Testimony

Shortly after he was indicted in 2017, Ricker requested that the government disclose any expert witnesses it intended to call at trial. The government filed its notice of intent to present expert testimony on March 5, 2019, approximately two weeks before trial was scheduled to begin. The notice identified FBI Forensic Examiner Imel as an expert and stated that he had examined child pornography videos that were recovered from Ricker's devices and compared them to exemplar photos of Ricker's hands, which had been taken pursuant to a search warrant in November 2018. The notice stated that Imel would testify that the hands portrayed in the videos matched the exemplar photos. The government provided Imel's expert report to defense counsel on March 14. The next day, the government filed an amended notice of intent to present expert testimony and provided to defense counsel the exemplar photos and hand comparison charts. Each chart showed an image from the videos and an exemplar photo placed side by side, with arrows noting comparison points. Ricker moved for a continuance and for the exclusion of Imel's testimony.

The district court denied the motion for a continuance and denied, in part, the motion to exclude Imel's testimony. As relevant here, the district court ruled that Imel would be allowed to testify that the hand depicted in certain videos appeared to be Ricker's hand. Trial began on March 18, 2019, and Imel testified on March 22. Two hand comparison charts and four exemplar photos were entered into evidence.

Ricker argues that the government failed to provide adequate notice of Imel's expert opinion and failed to timely provide the comparison charts and exemplar photos. He contends that the government's inexcusable delay required that Imel's testimony be excluded.

Federal Rule of Criminal Procedure 16(a)(1)(G) requires that, at the defendant's request, the government provide a written summary of any expert testimony that the government intends to use at trial during its case-in-chief. If the government does not comply with this rule, the court may order disclosure, grant a continuance, prohibit the party from introducing the evidence or grant any relief that is "just under the circumstances." Fed. R. Crim. P. 16(d)(2). "Decisions concerning the admissibility of expert testimony lie within the broad discretion of the trial court and will not be reversed on appeal unless there has been an abuse of that discretion." United States v. Anderson, 446 F.3d 870, 874 (8th Cir. 2006) (quoting United States v. Ortega, 150 F.3d 937, 943 (8th Cir. 1998)).

We conclude that the district court did not abuse its discretion in admitting Imel's testimony. As an initial matter, no specific deadline had been set for the disclosure of expert testimony. Rule 16 does not address the time for providing notice, and the scheduling order did not include a deadline for filing witness lists or disclosing experts. Unlike cases in which sanctions have been imposed on the government, there was no finding here that the government acted with reckless disregard of a discovery deadline. E.g., United States v. Sims, 776 F.3d 583, 584, 586 (8th Cir. 2015) (DNA evidence justifiably excluded in light of the government's post-deadline disclosure of lab report and identity of expert and its four-day pretrial identification of additional expert witnesses.); United States v. Davis, 244 F.3d 666, 668, 671-72 (8th Cir. 2001) (no abuse of discretion in excluding DNA evidence where the February 28 disclosure deadline for expert testimony had passed, and the government provided a preliminary DNA report on March 30 and a written report on March 31, the business day before the April 3 trial was set to begin).

-14-

On this record, we cannot say that the district court erred in admitting Imel's testimony. Ricker and his attorney plainly knew that photos of Ricker's hands had been taken pursuant to a warrant and were well aware of the videos Imel ultimately used for comparison, because they were central to the government's case and had been provided in discovery. Although the government did not produce the comparison charts and exemplar photos with its initial notice of intent to present expert testimony, the March 5 notice disclosed that Imel would testify regarding the comparison, as well as his conclusion that the hand in the videos was Ricker's. Visual comparisons of two images of hands may be within the province of an expert, but it is different from the "scientific and highly technical" nature of DNA evidence. See Davis, 244 F.3d at 671. As the district court aptly stated, "[I]f the fingers in the video were different from Ricker's, the very able defense attorney involved in the case would have presented such testimony." D. Ct. Order of Apr. 10, 2019, at 18.

### E. Prior Conviction Determined by Court

With respect to the four counts related to the transportation, distribution, receipt, and possession of child pornography, the superseding indictment alleged that Ricker "had a prior conviction under the laws of the State of South Dakota relating to the possession and distribution of child pornography." Such a prior conviction under state law increases the statutory sentencing range for federal child pornography offenses. 18 U.S.C. § 2252A(b)(1),(2).

The government presented evidence at trial that Ricker had pleaded guilty in April 2015 to possession or distribution of child pornography in Beadle County, South Dakota. Ricker admitted on cross-examination that he had been convicted of the state offense. Over Ricker's objection, the district court concluded that the fact of the prior conviction was a determination for the court, not the jury, and thus it did not instruct the jury that the prior conviction was an element of the federal child pornography offenses. The court determined at sentencing that Ricker's earlier

conviction constituted a qualifying prior conviction and that Ricker thus was subject to the enhanced sentencing ranges under 18 U.S.C. § 2252A(b)(1), (2).

Ricker argues that the question whether he had a prior state conviction for possession or distribution of child pornography should have been submitted to the jury because the existence of such a conviction increased the mandatory minimum sentences. See Alleyne v. United States, 570 U.S. 99, 103 (2013) (holding that "any fact that increases the mandatory minimum is an 'element' that must be submitted to the jury"). But as Ricker recognizes, the Supreme Court has held that the fact of a prior conviction is a sentencing factor for the court to decide. Almendarez-Torres v. United States, 523 U.S. 224, 239-47 (1998); Alleyne, 570 U.S. at 111 n.1 (deciding to "not revisit" Almendarez-Torres because the parties did "not contest that decision's vitality"); United States v. Abrahamson, 731 F.3d 751, 752 (8th Cir. 2013) (per curiam) ("[T]he Court in Alleyne left intact the rule that enhancements based on the fact of a prior conviction are an exception to the general rule that facts increasing the prescribed range of penalties must be presented to a jury."). The district court thus did not err in determining that Ricker had a qualifying prior conviction, nor in refusing to submit the issue to the jury. We also reject Ricker's arguments that the district court's actions constituted a constructive amendment of or variance in the indictment. See United States v. Farish, 535 F.3d 815, 821-22 (8th Cir. 2008) ("A constructive amendment occurs when the essential elements of the offense as charged in the indictment are altered in such a manner—often through . . . jury instructions—that the jury is allowed to convict the defendant of an offense different from or in addition to the offenses charged in the indictment." (quoting United States v. Whirlwind Soldier, 499 F.3d 862, 870 (8th Cir. 2007))); United States v. Buchanan, 574 F.3d 554, 564 (8th Cir. 2009) ("A variance arises when the evidence presented proves facts that are materially different from those alleged in the indictment." (internal quotation marks and citation omitted)).

## F.  Sentence

Ricker argues that his 600-month sentence is substantively unreasonable because the district court failed to adequately consider the impact of Ricker's autism diagnosis. See 18 U.S.C. § 3553(a)(1) (instructing the district court to consider "the history and characteristics of the defendant"). Ricker claims that his autism diagnosis is a mitigating factor because it "pushes him toward relationships with children," causes him to be susceptible to manipulation, and results in immaturity and an undeveloped sense of responsibility. Appellant's Br. 41. In support, he cites research indicating that "characteristics of autism may . . . predispose an autistic individual to sexual crimes," Christine N. Cea, Note, Autism & the Criminal Defendant, 88 St. John's L. Rev. 495, 502 (2014), as well as case law requiring district courts to consider a defendant's mental disability and age, United States v. Williams, 553 F.3d 1073, 1085 (7th Cir. 2009) (remanding for the district court to consider the defendant's "actual disability and the combination of his disability with his susceptibility to manipulation"); Gall v. United States, 552 U.S. 38, 58 (2007) ("Immaturity at the time of the offense conduct is not an inconsequential consideration." (quoting United States v. Gall, 374 F. Supp. 2d 758, 762 n.2 (S.D. Iowa 2005))). Ricker contends that the need to protect the public from further crimes does not justify his sentence.

The district court did not abuse its discretion in sentencing Ricker. See United States v. Feemster, 572 F.3d 455, 461 (8th Cir. 2009) (en banc) (standard of review). The court considered Ricker's autism diagnosis and the ably presented argument regarding its impact, along with Ricker's post-secondary education and solid work history, noting that Ricker's personal characteristics weighed in favor of a below-Guidelines sentence. Against Ricker's positive attributes, the court weighed the remaining 18 U.S.C. § 3553(a) sentencing factors.

The court recounted the details of Ricker's offenses, describing the case as "one of the worst child pornography cases that the Court has seen," in part because Ricker recorded himself sexually abusing the victims and then distributed the recording. The court rejected the argument that Ricker had been manipulated by S.M. and J.M.'s mother, finding instead that Ricker had groomed the girls, in part by helping to support their mother. The court found Ricker's testimony that perhaps the victims themselves took the photos and videos "completely ridiculous," because the images depict an adult penis and Ricker's fingers and because S.M. stated Ricker's name in one of the videos. The court also considered the trove of child pornography that Ricker possessed and had meticulously organized. Before sentencing Ricker to a below-Guidelines sentence, the court found cause to subject Ricker to a severe punishment, to deter him from committing further crimes, and to protect the public from him. We thus conclude that the sentence is not substantively unreasonable, and we reject Ricker's argument that "the mandatory minimum is unconstitutional as applied in this case." Appellant's Br. 44. See United States v. Rodriguez-Ramos, 663 F.3d 356, 366 (8th Cir. 2011) ("A sentence within statutory limits is generally not subject to review under the Eighth Amendment." (quoting United States v. Murphy, 899 F.2d 714, 719 (8th Cir. 1990) (alteration omitted))).

Conclusion

The judgment is affirmed.

_____