Filed 12/16/25  P. v. Sullivan CA2/3

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B336139 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. NA117076) |
| v. | |
| VICTOR SULLIVAN, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Daniel Lowenthal, Judge.  Affirmed.

Danalynn Pritz, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Wyatt E. Bloomfield and Christopher G.

Sanchez, Deputy Attorneys General, for Plaintiff and Respondent.

─────────────────────

A jury convicted Victor Sullivan of second degree murder, attempted murder, evading a peace officer, and resisting an executive officer. The jury also found true a firearm enhancement as to two counts. On appeal, Sullivan contends the trial court's exclusion of his mother, a potential witness, from the courtroom violated his constitutional right to a public trial. He also argues that the trial court abused its discretion in denying his motion to strike a firearm enhancement under Penal Code section 1385, subdivision (c)(2),[1] and that his trial attorney's failure to request a *Franklin* hearing violated his Sixth Amendment right to counsel. We affirm the judgment.

**FACTUAL AND PROCEDURAL BACKGROUND**

On May 7, 2021, Sullivan's cousin Solana Villegas, Alexis Esteban, and Jose Monge drove to an apartment complex in San Pedro, where Villegas's aunt lived. They parked and entered a stairwell, where they got into an argument with Sullivan. Sullivan shot Esteban in the head. The injury was fatal. Sullivan shot Monge twice, but he survived.

After the shooting, Villegas went to her aunt's apartment and told her that Sullivan had just shot Esteban. Villegas also told a detective that she saw Sullivan shoot Esteban.

Surveillance videos showed a white Nissan at the apartment complex on May 7, 2021. The license plate on the white Nissan was registered to Sullivan. An eyewitness heard a

─────────────────────

[1]     All further undesignated statutory references are to the Penal Code.

2

gunshot and then saw a white car exit the complex's parking lot. Villegas later identified Sullivan as having been in a white car at the scene.

The next day, a Los Angeles County Sheriff's Department deputy sheriff was on patrol in Rancho Palos Verdes when she saw Sullivan in a white Nissan Sentra take off at a high speed and run a red light. The area was a mixed residential and business neighborhood, with busy streets. The deputy followed as Sullivan continued to speed and change lanes, without signaling, in heavy traffic. She turned on her marked car's lights and siren to conduct a traffic stop. Sullivan failed to stop, sped up, ran another red light and stop signs, and continued to drive recklessly. Eventually, he parked in an alley and fled on foot.

A Los Angeles County Sheriff's deputy saw Sullivan run across the 110 freeway to an embankment. Sullivan resisted when the officer attempted to arrest him. They struggled and fell down the embankment. Eventually, the officer was able to detain and arrest Sullivan.

Law enforcement recovered two firearms thrown from Sullivan's vehicle during the pursuit. One was loaded. An expert testified at trial that one of the two recovered firearms was used to shoot Monge and Esteban.

In August 2023, a jury convicted appellant of the second degree murder of Esteban (§ 187; count 1); attempted murder of Monge (§§ 664, 187; count 2); evading a peace officer (Veh. Code, § 2800.2; count 3); and resisting an executive officer (§ 69; count 4). The jury also found true two firearm enhancements (§ 12022.5, subd. (a)).

Sullivan admitted a prior strike (§ 667, subds. (b)–(j)), and two aggravating circumstances (Cal. Rules of Court, rule 4.421(a)(2), (b)(1)).

The trial court sentenced Sullivan to 15 years to life, plus 10 years for the section 12022.5, subdivision (a) enhancement on count 1, 7 years on count 2, 8 months on count 3, and 8 months on count 4.

## DISCUSSION

### I. The Trial Court Did Not Violate Sullivan's Right To a Public Trial

Sullivan contends the trial court violated his constitutional right to a public trial by twice excluding his mother from the courtroom. The court excluded Sullivan's mother at the beginning of the trial pursuant to Evidence Code section 777 because she was a potential witness. Although she was later allowed to return, the court apparently excluded her again during defense counsel's closing argument, until the end of trial, due to her disruptiveness in the courtroom. Although Sullivan frames the alleged error as a violation of his constitutional right to a public trial, the trial court did not close the proceedings to any spectators. The trial court did not abuse its discretion by excluding and removing Sullivan's mother from the courtroom, or violate Sullivan's constitutional rights to an open trial.

#### A. Background

On August 9, 2023, the trial court granted the People's motion in limine "to exclude potential witnesses" pursuant to Evidence Code section 777. Based on this motion, the prosecution moved to exclude Sullivan's mother, Nellina Hill, from the audience. Defense counsel objected on the basis that Hill was not going to be called as a witness, explaining "she was

in a video, but she can't speak to any of the relevant facts related to what [the prosecutor] has to prove." The prosecutor responded that Hill was a percipient witness to evidence that would be presented through officer testimony. Thus, she was a potential witness. Defense counsel argued that it was unlikely the People would call Hill as a witness and "[j]ust because she's in a video does not mean she should be excluded." The prosecutor replied: "She's not only in the video, she is there for a scene that will be presented to the jury, so I think she has to be excluded."

The court inquired about the contents of the video. The prosecutor explained that it was recorded two weeks before the murder and showed Sullivan being stopped and arrested in the same vehicle he was driving on the day of the murder, thus corroborating that he drove the vehicle the day of the murder. The prosecutor stated, "So it's corroborating evidence that even though it's not the murder charge, it's very relevant to the People's case and our evidence."

The court responded that "it does sound as though she's a potential witness and she needs to be excluded. So I'm going to exclude her this morning. We can revisit it at lunchtime before 1:30[ ] [i]f you have any additional facts to support the belief that she will not or could not be called as a witness." Defense counsel added that the video was the best evidence and that Hill would only offer cumulative evidence. The court stated, "I hear you, and I will reconsider at a later point in time. But for now, I want to maintain the status quo, and she will be excluded." The court then excluded Hill as a "potential witness."

Defense counsel did not raise the issue of Hill's exclusion after lunch, or during the next two days of trial, Thursday and Friday, August 10 and 11.

5

On the morning of Monday, August 14, the prosecutor told defense counsel it was "fine" with him if Hill wanted to return to the courtroom. The prosecution called two more witnesses before Sullivan asked the court, "I was wondering, because my mom got kicked out." Defense counsel interjected, "I'm sorry, I meant to ask. Your honor, my client wanted to ask the court if his mother can be allowed back in." The prosecutor informed the court he had already told defense counsel she could return, and the court allowed Hill into the courtroom.

The next day, during defense counsel's closing arguments, the record indicates the following:

> "Unidentified speaker: (Unintelligible.)
> "The court: Hold on. We're going to take a pause. We need another deputy here. [¶] Ma'am, step outside.
> "Unidentified speaker: I am, your honor. Can I have a—
> "The court: I want someone to exclude her."

After defense counsel completed his closing argument, the court stated: "The record will reflect, out of the presence of the jurors, that the court excluded an individual who walked into the courtroom during the middle of [defense counsel's] closing argument. I think the individual might be the defendant's mother. She came in with a suitcase. She was disruptive. She was talking to people, [and] disrupted his closing argument. She's ordered permanently excluded from the rest of the proceedings." Defense counsel did not object to the exclusion, even when the court subsequently asked if there was anything else it needed to put on the record.

### B.    Applicable law

"The judge's power to control the progress and, within the limits of the adversary system, the shape of the trial includes broad power to sequester witnesses before, during, and after their testimony."  (*Geders v. United States* (1976) 425 U.S. 80, 87 (*Geders*).)  Evidence Code section 777 provides that the "court may exclude from the courtroom any witness not at the time under examination so that such witness cannot hear the testimony of other witnesses."  (*Id*., subd. (a).)  A trial court has " 'broad power' " to exclude witnesses under Evidence Code section 777, subdivision (a).  (See *People v. Aguirre* (2025) 18 Cal.5th 629, 701 [Evid. Code, § 777, subd. (a), codifies the broad authority in *Geders*].)  We review a ruling on a motion to exclude a witness for an abuse of discretion.  (*People v. Dunn* (2025) 18 Cal.5th 129, 171.)

In criminal trials, both the United States and California constitutions guarantee the right to a public trial.  (U.S. Const., 6th & 14th Amends.; Cal. Const., art. I, § 15; *People v. Woodward* (1992) 4 Cal.4th 376, 382 ["Every person charged with a criminal offense has a constitutional right to a public trial, that is, a trial which is open to the general public at all times."].)

### C.    Forfeiture

As an initial matter, the People argue Sullivan has forfeited his argument by failing to object below.  The People assert Sullivan forfeited any objection to his mother's first exclusion (before opening statements and during the evidentiary part of trial) by not renewing the objection after lunch, as the court advised he could.  (*People v. Holloway* (2004) 33 Cal.4th 96, 133 [tentative pretrial evidentiary ruling does not preserve an objection if appellant could have, but did not, renew the objection

7

or offer of proof and press for a final ruling].) Sullivan does not dispute that his counsel never raised the issue of his mother's first exclusion again; however, he argues that any objection would have been futile. We disagree. The trial court expressly stated that it would reconsider the issue and entertain further arguments, as early as that same day. At a minimum, Sullivan could have renewed the objection earlier than he did, with the knowledge that the court had expressed a willingness to consider the issue anew. Nevertheless, we exercise our discretion to consider Sullivan's argument of constitutional error in regard to the trial court's first exclusion of Hill. (See, e.g., *People v. Gonzalez* (2024) 107 Cal.App.5th 312, 327; *In re Alexandria P.* (2014) 228 Cal.App.4th 1322, 1340, fn. 10.)

However, we do not extend that discretionary review to Sullivan's argument that the court violated his right to a public trial by permanently excluding the person we will assume was Hill, after she disrupted *defense* counsel's closing argument.[2] It is not clear that this ruling was disadvantageous to Sullivan at the time, and Sullivan's failure to object at all forfeited the claim on appeal. (*People v. Catlin* (2001) 26 Cal.4th 81, 161; *People v. Thompson* (1990) 50 Cal.3d 134, 157.)

---

[2]  As the People observe, it is not clear from the record if the court excluded Hill during closing arguments. The court merely stated the excluded person "might" have been Sullivan's mother. The People also point out that Hill was later present for sentencing, despite the court permanently excluding this unknown person. Regardless of the identity of this individual, Sullivan forfeited the argument by not objecting in the trial court.

### D. The trial court permissibly excluded Hill as a potential witness

Sullivan contends the exclusion of Hill constituted a court "closure," which infringed on his constitutional right to a public trial. He thus asserts the trial court erred in failing to apply the factors relevant to a court's determination of whether the presumption of openness is overcome and closing a courtroom to the public is necessary. We disagree that this analysis is applicable here. The trial court excluded only potential witnesses from the courtroom, including Hill, pursuant to Evidence Code section 777. We have no basis to conclude that a trial court ruling under Evidence Code section 777 is subject to the constitutional analysis required before a court may close proceedings to non-witness spectators.

The constitutional right to a public trial is well-established as " 'a trial which is open to the general public at all times. (See U.S. Const., amends. VI, XIV; Cal. Const., art. I, § 15; see also . . . § 686, subd. 1.)' . . . 'Nearly a century ago [the California Supreme Court] declared in *People v. Hartman* (1894) 103 Cal. 242, 245 . . . : "The doors of the courtroom are expected to be kept open, the public are entitled to be admitted, and the trial is to be public in all respects, . . . with due regard to the size of the courtroom, the conveniences of the court, the right to exclude objectionable characters and youth of tender years, and to do other things which may facilitate the proper conduct of the trial." ' [Citation.]" (*People v. Bui* (2010) 183 Cal.App.4th 675, 680.)

However, we are aware of no authority, and Sullivan has identified none, concluding that individuals who will be called as witnesses in the trial are properly considered "the general

9

public." Nor does Sullivan identify any authority concluding that the trial court's exercise of its responsibility to facilitate the proper conduct of the trial, and to ensure the integrity of the proceedings through the appropriate exclusion of witnesses, in any way infringes upon the presumption of openness.

As the United States Supreme Court has explained, " ' " 'The requirement of a public trial is for the benefit of the accused; that the public may see he is fairly dealt with and not unjustly condemned, and that the presence of interested spectators may keep his triers keenly alive to a sense of their responsibility and to the importance of their functions. . . .' " ' [Citations.] [¶] In addition to ensuring that judge and prosecutor carry out their duties responsibly, a public trial encourages witnesses to come forward and discourages perjury." (*Waller v. Georgia* (1984) 467 U.S. 39, 46, fn. omitted.) Likewise, "[t]he purpose of [an exclusion] order is to prevent tailored testimony and aid in the detection of less than candid testimony." (*People v. Valdez* (1986) 177 Cal.App.3d 680, 687, citing *Geders, supra*, 425 U.S. at p. 87.)

We find persuasive the decisions of several federal courts of appeals which have concluded the federal equivalent of an Evidence Code section 777 exclusion order did not violate a defendant's Sixth Amendment right to a public trial. In *United States v. Ricker* (8th Cir. 2020) 983 F.3d 987, 994, the trial court excluded the defendant's father from the courtroom as he was identified on the government's witness list. The father was sequestered during the entire trial but was not called as a witness. In addressing the defendant's Sixth Amendment argument on appeal, the court explained: "The Supreme Court has said 'that an accused is at the very least entitled to have his

10

friends, relatives and counsel present, no matter with what offense he may be charged.' [Citation.] This entitlement is not absolute, however, and does not necessarily prohibit the sequestration under Rule 615 [of the Federal Rules of Evidence] of the defendant's friends or relatives who may be called as witnesses. [Citations.] Because [the defendant's father] could have been called to testify during his son's trial, we conclude that the district court did not err when it excluded him from the courtroom under Rule 615." (*Ricker*, at pp. 994–995; accord, *Zornes v. Bolin* (8th Cir. 2022) 37 F.4th 1411, 1416; see also *United States v. Love* (9th Cir. 2018) 743 Fed.Appx. 138, 138–139 ["Rule 615 [of the Federal Rules of Evidence] sequestrations do not violate the Sixth Amendment's public-trial guarantees."], quoting *United States v. Sherlock* (9th Cir. 1989) 962 F.2d 1349, 1356 [" 'The right to a public trial [ ] is not absolute and must give way . . . to other interests essential to the fair administration of justice' "].) These cases are consistent with our high court's conclusion over 140 years ago in *People v. Sprague* (1879) 53 Cal. 491, 493, that a defendant's right to a public trial was not violated by an order excluding all witnesses, including the defendant's wife and child.

Sullivan's reliance on *People v. Baldwin* (2006) 142 Cal.App.4th 1416, is therefore misplaced. The *Baldwin* court concluded there was a violation of the defendant's Sixth Amendment right to a public trial when the trial court closed the courtroom "to all spectators" based only on the People's assertion of a victim's discomfort. (*Baldwin*, at p. 1419.) *Baldwin* does not concern the court's authority to exclude a potential *witness*—not a mere spectator—under Evidence Code section 777. The Sixth Amendment applied in *Baldwin* because the right to a public

11

trial serves to "provide an opportunity for *spectators* to observe the judicial system . . . ."  (*Baldwin*, at p. 1421, italics added.) For the same reasons, Sullivan's reliance on *People v. Scott* (2017) 10 Cal.App.5th 524, and *Vidal v. Williams* (2d Cir. 1994) 31 F.3d 67, both of which concerned the exclusion of the defendant's non-witness, spectator family members, is unpersuasive.  Neither case addressed the exclusion of a *witness*.

We thus turn to whether the trial court abused its discretion by excluding Hill under Evidence Code section 777. Sullivan contends the prosecution's reasons for excluding Hill were "vague" and "irrelevant," since the video she appeared in was recorded two weeks before the murder, and there was other evidence that Sullivan was the shooter.  He asserts the "court should have been critical of what the prosecutor was saying before excluding a family member as important as a defendant's *mother*."

However, the prosecution explained that the exclusion of Hill furthered the purpose of allowing her potentially to be called to corroborate evidence that Sullivan drove a certain car that was seen at the apartment complex on the day of the murder.  The trial court did not abuse its discretion in reasoning that "it does sound as though she's a potential witness and she needs to be excluded."  The trial court ascertained why the prosecution sought to exclude Hill.  That her potential testimony might not have been critical to tie Sullivan to the white car at the apartment building, or was potentially cumulative, does not render the trial court's ruling an abuse of discretion.

Sullivan also appears to suggest that because his mother was only a *potential* witness, she did not fall within Evidence Code section 777.  However, the reasoning underlying Evidence

Code section 777 applies to both potential and actual witnesses. (See, e.g., *Rosato v. Superior Court* (1975) 51 Cal.App.3d 190, 228 ["petitioners, as potential witnesses, were excluded from the courtroom"]; see also *Wige v. City of Los Angeles* (C.D. Cal., Aug. 27, 2010, CV 09-01369 MM (PLAx)), 2010 WL 11473911, p. *5 ["it is common practice in California courts to exclude *potential* witnesses from the courtroom while others are testifying" (italics added)].) If a potential witness becomes an actual witness, the goals of ensuring the witness does not tailor his or her testimony based on that of earlier witnesses and of sequestering the witness to aid in the detection of " 'less than candid' " testimony still apply. Thus, although the prosecution did not ultimately call Hill to testify, or play the video she appeared in for the jury, these facts do not change our conclusion.

Sullivan argues that the order excluding Hill was "manifestly overbroad." We disagree. The trial court's order excluded Hill on the first morning of trial. The court made clear it would revisit the order when counsel presented additional facts as to whether Hill would be called as a witness. When counsel eventually raised the issue again, the court allowed Hill to return to the courtroom. We find no abuse of discretion in the court's order excluding Hill until it could be determined that she would not be called as a witness at trial.[3]

---

[3] Sullivan relies on *People v. Cooks* (1983) 141 Cal.App.3d 224, 330, however, the court in that case did not hold that an exclusion under Evidence Code section 777 must be narrowly tailored. *Cooks* stated: "At the commencement of trial the court ruled that witnesses would be excluded from the courtroom only during testimony about the incident to which the witness would later testify. A witness would not be excluded from the entire

13

Finally, Sullivan has not asserted that he suffered any prejudice from Hill's exclusion. We do not reverse an error under Evidence Code section 777 without an indication that the error resulted in prejudice. (*Morales v. 22nd Dist. Agricultural Assn.* (2016) 1 Cal.App.5th 504, 536; *Cooks*, *supra*, 141 Cal.App.3d at p. 330.)

We find no violation of Sullivan's constitutional rights to a public trial and no basis for reversal.

## II. Sullivan Has Not Established that the Trial Court Abused Its Discretion By Declining To Strike One Firearm Enhancement Under Section 1385, Subdivision (c)(2)

Sullivan challenges the trial court's denial of his request that the court strike a firearm enhancement (§ 12022.5, subd. (a)) on count 1 pursuant to section 1385, subdivision (c)(2). He argues the evidence did not support the trial court's basis for denying his request, and the trial court abused its discretion by only considering his "past conduct" in determining dismissal of the strike would endanger public safety. We reject both

---

trial, as the defense requested. Simon now complains that the trial court's order denied him a fair trial. He fails to point out, however, how he was prejudiced by the order. Simon does not explain, nor does the record show, that any witness was in the courtroom when other testimony about a given incident was being presented. We conclude that the trial court's ruling was not an abuse of discretion. (See Evid. Code, § 777.)" (*Cooks*, at p. 330.) That the trial court in *Cooks* issued a limited exclusion order in that case does not indicate the court's less specific order here was an abuse of discretion. (*People v. Ault* (2004) 33 Cal.4th 1250, 1268, fn. 10 ["cases are not authority for propositions not considered"].)

contentions.

## A. Additional background

Two probation reports detailed Sullivan's juvenile and adult criminal history. In May 2018, a juvenile court sustained a petition for battery involving Sullivan twice picking a fight with a classmate. (§ 243.) In August 2018, a juvenile court sustained a petition charging Sullivan with taking a vehicle without the owner's consent and fleeing a pursuing police officer while driving recklessly. (Veh. Code, §§ 10851, 2800.2.) In August 2019, Sullivan and an accomplice robbed a gas station. The accomplice pointed a gun at a victim while Sullivan tried to open the cash register and stole cigarettes. The juvenile court sustained a petition for second degree robbery.

A probation report stated that while Sullivan was on juvenile probation, he failed to attend school, used drugs, and failed to report to court. The report also indicated that, as a minor, Sullivan had been provided "multiple opportunities at rehabilitation to address his drug use, gang affiliation, and failure to participate in school . . . . Within six months of terminating from juvenile probation, the defendant was arrested on the present matter [fleeing from police while driving recklessly and with a loaded handgun] and a pending murder case." The report opined that Sullivan's "expanding criminal history within a short time frame, gang affiliation, history of failed probation rehabilitation, and serious actions in the current [matter] demonstrate that he is unwilling to alter his criminal conduct. As such, he is a direct threat to the safety and security of the public."

At the sentencing hearing, Sullivan's counsel requested that the court strike both section 12022.5, subdivision (a)

allegations under section 1385, subdivision (c)(2). The court asked if it was required to strike the enhancements because their application could result in a sentence of over 20 years, apparently referencing section 1385, subdivision (c)(2)(C), which lists as a mitigating circumstance: "The application of an enhancement could result in a sentence of over 20 years. In this instance, the enhancement shall be dismissed." Both parties clarified that this understanding was incorrect. Defense counsel explained the court retained its discretion not to dismiss the enhancement if doing so would endanger public safety. Defense counsel then argued that given Sullivan's lengthy sentence, striking the enhancements would not endanger the public because it would be "decades" before he was eligible for parole.

The court imposed the section 12022.5, subdivision (a) enhancement on count 1, but struck the same enhancement on count 2. On count 1, it reasoned Sullivan would be eligible for parole on that count after 15 years, and stated it was adding 10 years for the section 12022.5, subdivision (a) enhancement to run consecutively. The court explained that under section "1385, subdivision (c)(2) . . . not imposing this term would pose an extreme danger to society. The gentleman's behavior, not only on this day in which he killed Alexis [Esteban], but on the time period leading up to it, was out of control. It was increasing in severity. His criminal behavior was increasing in severity. There was just a complete disregard for all other people."[4]

---

[4]    On count 2, the court found: "I do find that not imposing the middle term would be dangerous to society because, as I indicated, his behavior is just so out of control, not only on this day in which he killed Alexis, but on the following day in which

16

Sullivan waived his right to a trial on the alleged aggravating factors and admitted two factors, one of which was that he had "engaged in violent conduct that indicates a serious danger to society." (Cal. Rules of Court, rule 4.421(b)(1).)

B.     **Applicable law**

Effective January 1, 2022, Senate Bill No. 81 (2021–2022 Reg. Sess.) amended section 1385. (Stats. 2021, ch. 721, § 1.) Section 1385, subdivision (c)(1) now provides that "the court shall dismiss an enhancement if it is in the furtherance of justice to do so, except if dismissal of that enhancement is prohibited by any initiative statute." Subdivision (c)(2) provides that "the court shall consider and afford great weight" to evidence of certain enumerated mitigating circumstances. "[T]he presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety. 'Endanger public safety' means there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others." (*Ibid.*)

However, "[s]ection 1385(c) does not mean that, whenever a listed mitigating circumstance is present, the trial court must dismiss all enhancements unless it finds dismissal would endanger public safety. The California Supreme Court has explained that, even without 'a finding that dismissal would endanger public safety,' the trial 'court retains the discretion to

he led police on a reckless chase. He also had guns on that day. His behavior before the murder, his long criminal history was increasing in severity. So I believe the middle term under 1170(b)(6) is appropriate. I will stay the 12022.5(a) as to count 2 only."

17

impose or dismiss enhancements provided that it assigns significant value' to the presence of any listed mitigating circumstances." (*People v. Bravo* (2025) 107 Cal.App.5th 1144, 1157 (*Bravo*), quoting *People v. Walker* (2024) 16 Cal.5th 1024, 1029.) "In other words, if the court does not find that dismissal would endanger public safety, the presence of an enumerated mitigating circumstance will generally result in the dismissal of an enhancement unless the sentencing court finds substantial, credible evidence of countervailing factors that 'may nonetheless neutralize even the great weight of the mitigating circumstance, such that dismissal of the enhancement is not in furtherance of justice.' [Citation.]" (*Walker*, at p. 1029.)

We review a trial court's decision not to strike an enhancement under section 1385 for abuse of discretion. (*People v. Gonzalez* (2024) 103 Cal.App.5th 215 (*Gonzalez*).) This includes our review of the determination that dismissal would endanger public safety. (*People v. Mendoza* (2023) 88 Cal.App.5th 287, 298.) A court abuses its discretion if its decision is "so irrational or arbitrary that no reasonable person could agree with it." (*People v. Carmony* (2004) 33 Cal.4th 367, 377 (*Carmony*).) It also abuses its discretion if it reaches its decision without exercising informed discretion, or if the court is unaware of the scope of its discretionary powers. (*People v. Fredrickson* (2023) 90 Cal.App.5th 984, 988.) " ' "[T]he burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary." ' " (*Carmony*, at p. 376.)

### C. Analysis

Sullivan argues the trial court abused its discretion because the evidence did not suggest that in the time period before the underlying offenses he was "out of control" or his

18

"criminal behavior" was "increasing in severity," as the trial court found.  Not so.

As detailed above, Sullivan's criminal acts were increasing in severity from school fights to reckless driving while fleeing a pursuing police officer, then to robbery committed with an armed accomplice, and then to murder and attempted murder.  The trial court reasonably described Sullivan's behavior as "out of control." The probation report also noted that Sullivan had been provided opportunities for rehabilitation, but his criminal behavior had nonetheless escalated quickly in severity.  Sullivan also admitted the aggravating factor that he engaged in violent conduct constituting a danger to society.[5]  We further note that although the trial court struck Sullivan's prior strike, it could still consider the prior juvenile adjudication for other purposes.  (See *People v. Garcia* (1999) 20 Cal.4th 490, 499 ["when a court has struck a prior conviction allegation, it has not 'wipe[d] out' that conviction as though the defendant had never suffered it; rather, the conviction remains a part of the defendant's personal history, and a court may consider it when sentencing the defendant for other convictions, including others in the same proceeding"].)  The evidence supported the court's reasons for declining to dismiss the firearm enhancement.

Sullivan next maintains that the trial court erred by focusing only on his current and past conduct to determine that dismissal of the count 1 enhancement would endanger public safety.  Relying on *Gonzalez*, *supra*, 103 Cal.App.5th 215,

---

[5]     The trial court explicitly relied on this admission when sentencing Sullivan, although not in its analysis regarding the enhancement.

19

Sullivan argues the trial court was required to consider that he is serving a "long prison sentence."

In *Gonzalez*, the defendant contended the trial court should consider his release date in determining whether he posed an unreasonable risk of danger to the public. (*Gonzalez*, *supra*, 103 Cal.App.5th at pp. 221, 223–224.) The record affirmatively showed that the trial court only focused on the defendant's current dangerousness when deciding whether to strike an enhancement. The Court of Appeal held that "the trial court erred because it considered only whether Gonzalez *currently* posed a danger to the public when assessing if a dismissal of the firearm enhancement would 'endanger public safety.' (§ 1385, subd. (c)(2).) In light of Gonzalez's sentence of 50 years to life for the murder conviction, the trial court also should have considered the date on which Gonzalez could be released if the firearm enhancement was dismissed and the fact that the release would be subject to a review by the Board of Parole Hearings and the Governor." (*Id.* at pp. 230–231.)

*Gonzalez* is distinguishable. Here, the trial court did not expressly limit its reasoning to Sullivan's current or past dangerousness. We thus must presume it considered the length of Sullivan's sentence in making its determination, as there is nothing in the record that establishes it did not. "We assume the trial court was aware of and followed applicable law." (*People v. Coleman* (2024) 98 Cal.App.5th 709, 724; see also *People v. Calhoun* (1983) 141 Cal.App.3d 117, 126 [a court's sentencing decision implies requisite subsidiary findings].) The court was not required to expressly state what time period it was relying on in considering whether to dismiss the enhancement. Indeed, if a trial court declines to dismiss an enhancement, it is not

20

mandated to use *any* "particular language" in doing so. (*Bravo*, *supra*, 107 Cal.App.5th at p. 1157.) While "[s]ection 1385, subdivision (a), requires a trial court to state its 'reasons for [a] dismissal . . . orally on the record,'" there is no similar statutory requirement when a court declines to dismiss an enhancement. (*Ibid*.) Thus, a trial court need not make any express findings on the record for us to find a proper exercise of discretion in denying a motion under section 1385. (*Carmony*, *supra*, 33 Cal.4th at p. 378 ["[w]here the record is silent" we affirm].)

Moreover, in *Gonzalez*, the court was considering that the defendant had been sentenced to 50 years to life. (*Gonzalez*, *supra*, 103 Cal.App.5th at pp. 230–231.) Sullivan will be eligible for parole in less than half that time. Sullivan states that, without the punishment for the firearm enhancement, he would not be eligible for parole for 17 years, when he is 36 years old, and he asserts that "[a] lot changes between 18 [when he committed the present offenses] and 36 years of age." For this proposition, he cites *People v. Hardin* (2024) 15 Cal.5th 834, 846, which states that in expanding section 3051, "the Legislature considered scientific evidence that neurological development, particularly in areas of the brain relevant to judgment and decisionmaking, continues beyond adolescence and into the mid-20's." Aside from his citation to *Hardin* regarding brain development, Sullivan provides no evidence that he will be rehabilitated in 17 years or will be too elderly to pose a danger to society. His argument is therefore based on his age and the passage of time. He has not established an abuse of discretion under the reasoning of *Gonzalez*.

Sullivan has not established that the trial court abused its discretion in declining to strike both firearm enhancements under section 1385.

## III. Sullivan Has Not Established Ineffective Assistance of Counsel By Failing To Request a *Franklin* Hearing

Finally, Sullivan contends he was denied the right to effective counsel under the Sixth Amendment because his trial attorney should have requested a hearing under *People v. Franklin* (2016) 63 Cal.4th 261 (*Franklin*), and presented evidence to create a record for a future youth offender parole hearing. Sullivan has not established ineffective assistance of counsel.

### A. Applicable law

The Sixth Amendment to the United States Constitution, and article I, section 15, of the California Constitution, guarantee a defendant the right to the assistance of counsel in criminal prosecutions. To establish a claim for ineffective assistance of counsel, a defendant must demonstrate that trial counsel's performance was deficient and that the defendant suffered prejudice as a result. (*Strickland v. Washington* (1984) 466 U.S. 668, 687–692 (*Strickland*).) The first element "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant [under] the Sixth Amendment." (*Id*. at p. 687.) The second "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." (*Ibid*.)

"[A] reviewing court will reverse a conviction based on ineffective assistance of counsel on direct appeal only if there is affirmative evidence that counsel had ' " 'no rational tactical purpose' " ' for an action or omission." (*People v. Mickel* (2016) 2

22

Cal.5th 181, 198.) Accordingly, "if the record ' "sheds no light on why counsel acted or failed to act in the manner challenged," ' we must reject the claim ' "unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation." ' [Citation.]" (*People v. Caro* (2019) 7 Cal.5th 463, 488.) There is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. (*People v. Stanley* (2006) 39 Cal.4th 913, 954.) "We review the legal question of whether defendant's constitutional rights were violated de novo." (*People v. Palmer* (2020) 49 Cal.App.5th 268, 280.)

In *Franklin*, *supra*, 63 Cal.4th 261, the California Supreme Court considered the rights of defendants who will be entitled to youth offender parole hearings after 25 years of imprisonment under section 3051, at which, under section 4801, the Board of Parole Hearings must " 'give great weight to the diminished culpability of juveniles as compared to adults, the hallmark features of youth, and any subsequent growth and increased maturity' [citation]."[6] (*Franklin*, at p. 268; see *id*. at p. 269.) The court observed that the "criteria for parole suitability set forth in Penal Code sections 3051 and 4801 contemplate that the Board's decisionmaking at [the defendant's] eventual parole hearing will be informed by youth-related factors, such as his cognitive ability, character, and social and family background at the time of the offense." (*Franklin*, at p. 269.) Thus, the court held that in preparation for such a hearing, a defendant must be provided an "adequate opportunity at sentencing to make a record of mitigating evidence tied to his youth." (*Ibid*.)

---

[6] The People do not dispute that Sullivan will be entitled to a youth offender parole hearing.

Because sections 3051 and 4801 "contemplate that information regarding the juvenile offender's characteristics and circumstances at the time of the offense will be available at a youth offender parole hearing to facilitate the Board's consideration," "[a]ssembling such statements 'about the individual before the crime' is typically a task more easily done at or near the time of the juvenile's offense rather than decades later when memories have faded, records may have been lost or destroyed, or family or community members may have relocated or passed away." (*Franklin*, *supra*, 63 Cal.4th at pp. 283–284.)

In *Franklin*, the record was unclear as to whether the defendant had been given a sufficient opportunity to make a record, so the court remanded, instructing that on remand the court could receive relevant evidence for the defendant's eventual youth offender parole hearing. This included prosecution evidence demonstrating the youth's culpability or maturity, and evidence otherwise relevant to the youth-related factors. (*Franklin*, *supra*, 63 Cal.4th at p. 284.)

### B.    Analysis

The record does not affirmatively show why defense counsel did not request a *Franklin* hearing. We therefore must "presume counsel's decision not to raise the claim was a reasonable, tactical one unless the record affirmatively demonstrates otherwise." (*People v. Lucas* (1995) 12 Cal.4th 415, 443.) Nothing in the record creates an inference that counsel's decision was anything other than a tactical one. Thus, as in *People v. Campos* (2024) 98 Cal.App.5th 1281, 1299 (*Campos*), the "record does not support a finding of ineffective assistance of counsel on direct appeal. Defense counsel's reason for not requesting a *Franklin* hearing could be one of several. While ineffective assistance is one

24

possibility, another possibility is that defense counsel's research and evaluation led him to conclude that, on balance, 'delving into the past' in a *Franklin* hearing would not be 'beneficial' [citation] to this particular defendant. Because the record does not *affirmatively* establish ineffective assistance of counsel, we reject it on direct appeal." (*Ibid.*, fn. omitted.)

Sullivan asserts "[t]here is no conceivable reason on this record why counsel would not ask for [a] *Franklin* hearing" pointing to school records he submitted when he made a *Marsden* motion.[7] He highlights an Individualized Education Program (IEP) document indicating that he had a learning disability and noting a discrepancy between his "average reasoning ability" and his reading skills. Sullivan asserts that this document, which is in the appellate record, should have been filed by his counsel for "purposes of a future *Franklin* hearing" and "such a record would have triggered competent counsel to have investigated further and asked for the appointment of a psychiatrist or psychologist to evaluate appellant and file a report." He contends trial counsel's statements regarding a continuance suggested he either did not read the IEP or did not appreciate the import of its content.

We disagree that this evidence establishes deficient performance by counsel. There is no indication that counsel did not read or appreciate the contents of the IEP. There is also no basis for this court to infer that competent defense counsel would necessarily have ordered an evaluation by a psychiatrist or psychologist based on an IEP focused on academic achievement.

In addition, at the time of sentencing, the probation reports were already part of the record, and they described several mitigating circumstances. The record does not reveal the extent

---

[7]     *People v. Marsden* (1970) 2 Cal.3d 118.

25

to which defense counsel had already conducted further investigation into possible *Franklin* evidence.  As in *Campos*, the record is "silent as to whether defense counsel made a tactical conclusion that, in spite of [witnesses who might have provided insight into the appellant's background and social issues], a *Franklin* hearing would not have been beneficial to defendant on balance."  (*Campos*, *supra*, 98 Cal.App.5th at p. 1299, fn. 11.)

Because Sullivan has not established that his trial counsel's performance was deficient, we need not determine whether he was also prejudiced.  (*Strickland*, *supra*, 466 U.S. at p. 697 [no need "to address both components of the inquiry if the defendant makes an insufficient showing on one"].)  Sullivan has not established ineffective assistance of counsel.

## DISPOSITION

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

ADAMS, J.

We concur:

EGERTON, Acting P. J.

HANASONO, J.